All right, our fourth case for this morning is Denny Anderson v. United States. Mr. Parker. May it please the court. I'm Josh Parker, counsel for petitioner appellant Denny Ray Anderson. At the time he pled guilty, Denny Ray Anderson suffered from a number of severe psychiatric disorders, including chronic schizophrenia and bipolar disorder, for which he had been a large dosage of an antipsychotic. So what specifically are you saying the court should have done at the time of the plea? Was it required to order a psychiatric examination or simply to question Mr. Anderson and his counsel more closely? I think at the time of the plea, there was enough information. Of course, an evidentiary hearing would allow us to develop this record better, to raise a bona fide doubt about his competence, to raise an evidentiary hearing. At that point, the district court judge knew Mr. Anderson had schizophrenia, knew that he was on potent psychotropic medications, knew that he departed from the lectern before the plea colloquy and had to be ordered back there, causing the prosecutor to remark he was ready to run around for a while, knew that he gave a non-responsive answer, saying that's pretty good. God forbid. I got to say, the supposed misbehavior in the plea hearing seems minimal. I saw plenty of non-responsive answers from time to time for lots of different reasons. The that's pretty good, if I recall correctly, was in response to a question about understanding that you give up the right to hold public office and to serve on a jury. For a lot of defendants, that's a joke. I frankly didn't draw a whole lot of weight from that about his condition in that hearing. Sure. Even if you don't draw a lot of weight from that, the critical thing to draw weight from is the fact that as trial counsel informs the court, he needed to be on the correct medications in order to focus in his consultations with her and in order to be competent effectively. The government does not dispute that. At sentencing, Mr. Anderson said he did not receive his medications that morning. Trial counsel informed the district court that every time he changed cell block units, he did not receive his medications for a period of time. She implied that was a regular occurrence over the course of her representations from him. The reason that this, Judge Rovner goes back to the change of plea hearing, is the sentencing hearing was only two months, a little more than two months after the change of plea hearing. At that point, the district court would have a duty to hold a retrospective competency evaluation to assess, hey, you know what? If the defendant was not receiving his medications throughout, we might have to reinvestigate whether at the change of plea hearing the court is doing what the judge is supposed to do, asking whether he's on drugs. He says, yes, I am. Are you under medication now? Yes, he says. Then there's this exchange where the court asks him whether it's affecting his ability to understand. He's a little equivocal. He says, not that I know of. I mean as good as I can. He's saying these things. I want to know whether you're making the argument that somebody with a record of psychological disturbances as serious as his record, whether the court should regard such a person as competent to answer those questions even without further exploration, without a competency hearing. Right. Somebody who's grandiose might think that he's completely able to answer questions and he may not be. Right. Two responses to that. First, in Holmes, this court made the point that someone who's not competent might not be competent to attest to his own competence. Yes, we certainly make that point. The second point is a specific point about the nature of chronic schizophrenia, which as this court explained in Brown, defendants might have certain periods of lucidity, but then at other moments be suffering from delusions or paranoia. Or as this court said in Holmes, someone might appear perfectly normal until you ask about what they're really thinking. So for that reason, when you have someone with chronic schizophrenia, there needs to be more investigation. And this kind of goes back to Judge Rovner's question. Maybe there wouldn't have needed to be a competency hearing if, for example, there was a very recent psychiatric assessment where they said the judge was competent, where they said Mr. Anderson was competent. But there was no such conclusion. And this court said in Brown that when you have a defendant with chronic schizophrenia, recent psychiatric assessments are essential. Here, the district court had no psychiatric or medical assessments before it. And the record is unclear on the extent to which trial counsel had such records before it either. Now, when I look at Mr. Anderson's affidavit, I note that he alleges broadly that before, during, and after the plea and sentencing hearings, he was suffering from confusion, delusions, hallucinations, convulsions, and so on. But I gather that most of these sorts of behaviors or symptoms would have been noticeable by his counsel and or Judge Pratt if they actually occurred during one of the hearings. So I'm wondering why that sort of a hearing? Your Honor, first, he does allege a specific allegation that he had a psychotic episode during his initial appearance, which caused it to be delayed. And that has to be... We don't know anything more about that than just he describes it. I couldn't find anything detailed about that. Yes, but at this stage, because it was delayed, there was no report. There was no formal report. And this stage, according to this court's case in CAFA, that his verified statement alone suffices. But besides that, this again goes to the nature of chronic schizophrenia, which is a defendant might appear perfectly normal, even though what he's really thinking, he's thinking in a disordered way. And at this stage, given the fact that his competence depended upon taking his medications, the government does not dispute that. They do not dispute that he was, without the correct medications, the morning of sentencing. And a defendant must be competent at all stages, as the Supreme Court said in droves. Can I quickly ask you, I know your time is running out, but the district court comments that the sentence, which was 180 months, as I remember, was in fact the absolute lowest sentence he could have received. So what's he going to get out of all of this? Your Honor, first, he has a right to be sentenced while he is competent. It is an important due process right, because he would be in absence, so he wants to vindicate that right. But also, it's no guarantee that years later, that one of the key witness, who he shot the gun and the witness was there, he was reluctant to testify and come forward. So it's unclear  then. You're arguing the plea was incompetent. Yes. Because you've got the difference in evidence as to sentencing and plea, right? Yes, absolutely. And you can't suggest that somebody who's schizophrenic is incapable of entering a valid plea, do you? No, it's not just the fact that he's schizophrenic. It's the fact that he's schizophrenic and on particularly potent medications. Are you saying that he could not enter a valid plea? In light of all the facts, this is an individualized determination, in light of all the facts that the district court was aware of by the time sentencing came around. No, sorry, let's talk about the plea and let's talk about the sentence, because in light of what Chief Judge Wood is pointing out, it's hard to see how a remand for a new sentence gets him anything, right? Right, well, he has the right to be sentenced while competent. You would get him a sentence while competent, would you say? That would be 180 months. Yes, unless somehow the plea agreement fell apart, that seems unlikely. But we've got a district judge who knows he's mentally ill and who's using that to his benefit in mitigation, correct? Correct. And who are observing his behavior in the plea hearing. There's no indication, as I see, that he didn't get his drugs, his medications for the plea hearing, is there? It's unclear from the record. Is there any indication he did not, in the record? I would say his unusual behavior, which I realize, Your Honor, I thought was trivial. Anything else? The Miss Cook statement at sentencing that he regularly did not receive his medications. It would be sheer guesswork at this point to set aside his plea. Okay. Has anybody actually looked at the CD that has his records on it? The trial counsel apparently has, but I have not seen it. You have not? No. Why not, and why should we be doing this litigation on the theory about what might be on those records? Your Honor, at this point it would be inappropriate to bring up facts that were not included with the 2255 petition, and I'm representing Mr. Anderson for the first time on appeal, and all we're asking for is an evidentiary hearing. He alleges that he was suffering hallucinations. He alleges that without his medications he was not competent, and we know he was without his medications at sentencing, and that evidence can be developed in the evidentiary hearing, because the record does not conclusively show he's entitled to no relief. If there are no further questions, I'll reserve any time the court has. Mr. Reitz. May it please the court. Brian Reitz for the government. All the parties to this proceeding that were in the courtroom with Mr. Anderson believe that he was competent. The record readily supports that determination. Looking at the test for- But should there at least be a more detailed and searching plea colloquy once the court is apprised? That a defendant has a significant history of mental illness and is currently taking psychotropic medication. I don't think so, Your Honor, because one, there has to be a bona fide need to have such a competency hearing. But the nature of the disease sometimes should factor into that assessment. The district court judge blows right through this as though the answers are all what she usually hears. No, I'm not on any medication, nothing's wrong with me. But instead, he reports, she gives the standard question appropriately, any mental illness, addictions, and he says, yes, I'm on psychotropic drugs for paranoid schizophrenia and a few other things. She never asks what else. She never asks which medication. She doesn't probe it at all. It's troubling to me that she just blasts through this and then takes his word for it that he's competent when that may or may not be the case, depending on the illnesses and depending on the drugs. I think first, the standard isn't whether there's a mental illness or medication. The second point there I think is very important, that Mr. Anderson's attorney- I didn't say that was the standard. I said evidence that the judge's assessment as to whether an evidentiary hearing is necessary surely includes the nature of the alleged mental illnesses. If he came in and said, I had a bad cold last night so I took some Benadryl, she's not going to worry about it, right? Because even though Benadryl makes you a little goofy sometimes, most people can absorb that. If she says, I'm on some of the most powerful psychotropic drugs that exist, further inquiry is sensible. It's like she's going through the motions. She just says, does your medication affect your ability? Of course, how does he know? He doesn't know. He's not a reliable reporter. I think the person best positioned to know is his attorney and Mr. Anderson's attorney who had looked at his medical records believed incompetent. I think if we could step back and look at both the plea and the sentencing hearing, it shows that he met the test for competency with ease. First, there has to be the ability to consult with his attorney. Of course, we also have an ineffectiveness of counsel argument. If the attorney was asleep at the switch and didn't ask for the competency hearing when she should have, that's a different issue. That is a different issue. That being said, she had his medical records. She gave his medical records to the court and to the probation office if you look on sentencing cases. It doesn't follow up on anything. Because, again, she dealt with him and he was able to consult with her. I think the sentencing hearing... When he was on his medication, she qualifies that at the sentencing hearing. She says if he's on his medication and hasn't recently changed cell blocks, he's fine, but he's goofy if he's not fine. She says that his focus is not as good on the medication. And that she can't really effectively work with him when he's not on his medication. I'm not sure that's what she said. That being said... Is it fair to say that counsel was very aware of both the mental illness and the issue of competence? Yes, your honor. She was aware of both of these things and she concluded that in dealing with him, she was able to consult with him. And again, this has shown they work together and make valid objections. In fact, two of the objections to Mr. Anderson's criminal history are sustained. That couldn't have happened if there wasn't an effective relationship between the two. So that shows a working relationship between the two. So that meets the competence and prompt on that. Second, a rational understanding of the proceedings. Mr. Anderson showed that he was able to explain his crime. He rationalized and tried to diminish his culpability. He says this weird thing about, well, he was entitled to steal because they fired him. Well, that was a different crime. But yeah, I think it's not unusual. I don't really think it's unusual to see defendants come up with rather ineffective rationalizations for their criminal behavior. But here for this crime... This struck me as a little beyond ineffective, but anyway... But here he was able to say, I'm not as culpable because I did not shoot at the person I shot in the air. So that shows an understanding of this crime. Then he was able to explain his regret. Then later on, he was able to understand or display his understanding of his sentence. But you know, he does allege in his affidavit that he was experiencing all those behaviors, you know, the confusion, the delusion, the hallucinations, so forth, at the time of both the plea and sentencing hearings. And I want to know why we can simply disregard the allegation, even if it is self-serving, without holding a hearing. Because I think, as Your Honor hinted at in the opening part of this argument, they were so conclusory, and if not palpably incredible, to think some of the things that Mr. Why are they palpably incredible, since some doctor has prescribed all of this psychotropic medication, presumably? They're far from palpably incredible. Your Honor, I think, as Judge Roedmer pointed out in the opening portion of this argument, some of these things would have been readily apparent. And some of the things the allegate alleges, like running around the courtroom... Do you think if you were feeling confused right now, I would know that? I think... That's assuming I'm not. Are you confused? I think confusion, yes, that might be in a different ballpark. Which is one of his allegations. But a lot of his allegations, I think, would almost certainly have been apparent to the parties. They would have been, I think, certainly shown up in the record at some point. And as far as the confusion goes, I think that's really what we rely on his attorney to do. And his attorney never... His attorney, outside of maybe some issues with his focus, when he was on his medications, his attorney clearly felt satisfied that he was competent. But then he says, well, this is sentencing, that he wasn't on his medications that day. That statement at the very end of the sentencing hearing is what concerns me. I'd like you to address that. They're all done, and then at the end, he says, I didn't get my meds or all my meds this morning. Right. It's a little unclear what meds he's talking about. And nobody says, wait a minute, you know, you didn't get your medication? What kind of medication? What's happening here? I mean, everyone just goes away. I think whether that is somewhat disconcerting or not to this court, as this court was pointing out in the opening portion, that occurred at the sentencing and not the guilty plea. There's no indication at the guilty plea he wasn't receiving his medication. What if he'd gone completely crazy between guilty plea and sentencing and was like drooling while he's in there in the sentencing hearing? Surely you wouldn't have the sentencing hearing then. You would hospitalize him. You would see if some doctor could get him back up to some reasonable level of competence. So we don't sentence people if they aren't aware of what's happening. Certainly, Your Honor. Even if the 180 months was a good deal for him. And if that scenario arose, I think certainly the district court judge would be compelled to hold a hearing. But that didn't happen here. In fact, the sentencing hearing itself, the record, establishes his competency, as I already discussed, the two prongs. I think the sentencing hearing really is where is the best evidence of his competency. So maybe he didn't get the medication. But there's no other. And he was very vocal in his sentencing hearing. So if that was the only thing he had said in his sentencing hearing, I think it would be a lot more disconcerting in retrospect. But considering his engagement otherwise in the sentencing hearing, I think that the district court was correct in feeling satisfied. And this court should feel satisfied. You know, people can be totally lucid. And then, as often happens in this courtroom, someone will say something very bizarre. Shouldn't that be taken into consideration? I think consideration, sure. But it should be read in context. I don't think one potentially bizarre statement, if we have that, should necessitate a competency hearing. Especially, again, when this is a defendant that was shown engaging with his attorney. His attorney had no qualms about his competency. And he understood the proceedings against him. He explained his crime, why he was not as culpable. He understood his sentence, expressing his own volition that he was going to have to serve about 13 more years. Don't you think it would have been prudent to require the court to ask the defendant and his attorney about the presence of any side effects? Because these medications are I don't understand the rush in that courtroom. The government would disagree that there was a rush, Your Honor. I think the record discloses that he was competent. Again, because not only did his attorney not request a competency hearing, but especially the sentencing hearing showed that he was able to communicate and develop an effective defense with his attorney, which, again, is the first prong of the competency hearing. And there's really no thread in the record to show that he didn't understand the proceedings against him, either the crime he was charged with, the sentence he faced. So the government would disagree that there was a rush. And I think the record establishes both prongs of the competency fully. Do you know anything about this business, about him having to pay for his medications? I apologize. I do not, Your Honor. He was in Marion County State Court Jail at that point in time. I'm not entirely sure about that. I guess that was the problem maybe when he was released. I know that's one of the things his attorney argued in mitigation that led to this crime is that he was not on his medication and therefore he was unable to conform his behavior legally. But I don't think that may be problematic from a broader perspective. But I don't think that should be problematic for the competency. All right. Thank you. Thank you very much. Now, your time expired, Mr. Parker, but I'll give you one more minute. A couple of quick points. The government's statements that Mr. Anderson's statements about his objections to his sentence at sentencing establish his competence reflects a fundamental misunderstanding of chronic schizophrenia. In Holmes, the defendant there was able to speak lucidly and intelligently about res judicata, yet the court held because he had schizophrenia and was intermittently lucid. That established doubts about his competence. But second, even the statements he makes at sentencing, he is just parroting, Mr. Anderson is parroting his attorney in the district court. When he said, I didn't shoot at that man, that was only after trial counsel said, Mr. Anderson objects that he didn't shoot at the individual. And his second statement, the district court said some charges were dismissed, were vacated, and then Mr. Anderson repeats those charges were dismissed. He's not engaging in any independent, intelligent thought. But second, an important point is even if you don't find the change of plea behavior alarming, based on this court's case law, you don't need to, you have to look to all factors, including things outside of the courtroom. So in Newman, and this will be my concluding thought, in Newman there was only one non-responsive answer in a colloquy that occurred during the trial. That was the only alarming behavior that was pointed out during the trial proceedings. Yet because the defendant in Newman had severe cognitive and mental health limitations, that sufficed to raise a bona fide doubt about his competence. Because the record does not conclusively show Mr. Anderson is entitled to no relief on his due process and an effective assistance claim, he should be granted an evidentiary hearing on remand. Thank you. Thank you very much. And you accepted this case by the court's appointment, as I recall. So we thank you and your firm very much for your assistance. To your client, to the court, thanks as well to the government. We'll take the case under advisement.